```
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

JEANETTE LAHN-SHEEN LEE,

     PLAINTIFF
                                        05 Civ 5528 (KMK)(JCF)
     vs                                 PLAINTIFF'S THIRD
                                        AMENDED COMPLAINT
                                        [JURY TRIAL]

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE and
COMMAND OFFICERS, individually and
in their official capacities,NEW YORK
CITY POLICE OFFICER DANWANTT SANASIE,
Shield # 26886, individually and in
his official capacity, RAYMOND KELLY,
individually and in his official capacity
as the Police Commissioner of the City of
New York, MICHAEL BLOOMBERG, individually and
in his official capacity as Mayor of the City
of New York, JOSEPH ESPOSTIO, individually and
in his official capacity as Chief of the New
York City Police Department, THOMAS GRAHAM,
individually and in his official capacity as the
Commanding Officer of the New York City Police
Department Disorders Control Unit, TERRANCE MONAHAN,
individually and in his official capacity as
Assistant Chief in the New York City Police
Department, BRUCE SMOLKA, individually and in his
capacity as Chief of the New York City Police
Department Patrol Borough Manhattan South, and JOHN J.
COLGAN, individually and in his official capacity as
Deputy Chief and Commanding Officer of the Pier 57 New
York City Police Department Detention Facility, LORENZO
JOHNSON, individually and in his official capacity as a
Captain [formerly Lieutenant] in the New York City Police
Department, CHIEF JAMES O'NEIL, individually and in his
official capacity, MICHAEL SCAGNELLI, individually
and in his capacity as Chief in the New York City
Police Department, GARRY McCARTHY, individually and
in his official capacity as Deputy Commissioner of
the New York City Police Department,

     DEFENDANTS
_____
```

## I. INTRODUCTION

1. This is a litigation which arises out of the Plaintiff's arrest, detention, and subsequent prosecution.

2. The Plaintiff sues for the violation of her

constitutional and civil rights and her rights as otherwise guaranteed under the laws and Constitution of the United States and the laws and Constitution of the State of New York.

3.   The incident which gives rise to this lawsuit commenced on August 27, 2004 at or about 9:00 P.M. in the vicinity of 9th Street and 2nd Avenue, New York City, New York.

4.   The Plaintiff seeks monetary damages for the violation of her rights and the injuries flowing therefrom and she seeks such other and further relief as is necessary to provide her full and complete relief and which is otherwise necessary to serve and fulfill the interests of justice.

## II. JURISDICTION

5.   Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331, 1332, 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

6.   The Plaintiff and Defendants are residents of diverse states thereby allowing for the invocation of diversity jurisdiction of this Court pursuant to and under 28 U.S.C. Section 1332.

7.   The value of the rights in question and the injuries and damages flowing from the violation thereof is in excess of one hundred thousand dollars.

8.   To the extent that such is deemed appropriate and necessary or otherwise desirable, the Plaintiff invokes pendent party and pendent claim jurisdiction pursuant to 28 U.S.C. Section 1367.  The State law claims derive from the same transaction which gives rise to the federal based claims and they have a common nucleus of operative fact with the federal based claims.

9.   This is an action wherein the Plaintiff seeks redress for the violation of her constitutional and civil rights as guaranteed under the laws and Constitution of the United States and in which the Plaintiff seeks redress for the violation of her rights as guaranteed under the laws and Constitution of the State of New York.

## III. PARTIES

10.   The Plaintiff is an American citizen and resident of the State of Michigan, City of Detroit, County of Wayne.

   11.   Defendant City of New York is a municipal entity which exists under the laws and Constitution of the State of New York and which is empowered and authorized under the laws and Constitution of the State of New York to maintain a police department in order to provide for the public welfare of those who reside in the City of New York and are otherwise present in the City of New York for whatever business or pleasure the individual may be present in New York City to transact.

   12.   Defendant Sanasie, Lorenzo Johnson, and "Does" are New York City Police Officers. They are sued in their individual and their official capacities.  They are agents and employees of the City of New York. Although their actions as hereinafter described are unlawful and unconstitutional and otherwise wrongful, they were actions taken by the Defendants in the course of their duties and functions as New York City Police Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of such.

   13.   Defendants Kelly, Bloomberg, Esposito, Smolka, Monahan, Graham, O'Neil, Scagnelli, McCarthy, and Colgan are agents and employees of the City of New York and the policy making and operational command officers of and for the City of New York responsible for the policing of the Republican National Convention meetings in the City of New York which meetings commenced on August 30, 2004 and continued thereafter for several days. The policing operation commenced prior to the formal convening of the Republican National Convention meetings including on August 27, 2004, the date on which the Plaintiff was arrested as described hereinafter.

                        IV. ALLEGATIONS

   14.   The Plaintiff is Jeanette Lahn-Sheen Lee.

   15.   The Plaintiff is a student at the University of Michigan. The Plaintiff is a senior majoring in comparative literature.  The Plaintiff anticipates graduating with a Bachelor of Arts degree in December, 2005.

   16.   The Plaintiff was born in Detroit where she lived with her family for four years.  Thereafter, the Plaintiff and her family moved to a small suburb of Detroit-- Huntington Woods, where the Plaintiff lived for much of her life.

   17.   In 1995, the Plaintiff and her family re-located to Beijing, China where she lived for three years. Thereafter, the Plaintiff returned to Huntington Woods in 1998 where she graduated from high school in June, 2000.

   18. The Plaintiff then attended Vassar College in

Poughkeepsie, New York for one year before deciding to return to Michigan where she, then, enrolled in and at the University of Michigan.

19. The Plaintiff presently resides at 3745 Second Avenue, Apt. # 5, Detroit, Michigan 48201.

20. The Plaintiff is twenty three [23] years of age.

21. The Plaintiff's birth date is: June 22, 1982.

22. In or about the second week of August, 2004, the Plaintiff came to New York City in anticipation of attending demonstrations at the then up-coming Republican National Convention which was scheduled to open its meetings on August 30, 2004 and continue thereafter for several days.

23. Prior to coming to New York City and for approximately four years the Plaintiff had been involved in various organizations seeking and promoting and advocating economic and social justice [specifically the student anti-sweatshop movement and efforts in that regard; and youth organizing in Detroit]. Furthermore and prior to coming to New York City on August, 2004 in order to attend the demonstrations expected to take place at the Republican National Convention, the Plaintiff had became increasingly involved with Indymedia, a network of independent media centers in over 160 countries across the globe.

24. The Plaintiff came to New York City in August in order to attend the demonstrations associated with the convening of the Republican National Convention and, in that regard, to work with the New York City Indymedia Center in providing non-corporate coverage of the Republican National Convention and, in addition, to see her boyfriend who was also involved with Indymedia and who lived in Brooklyn.

25. The incident which gives rise to this litigation commenced on August 27, 2004 in the vicinity of Second Avenue and 9th Street, New York City. The incident commenced in the evening of said date.

26. The Plaintiff had been riding her bicycle in Manhattan as part of the monthly "critical mass bicycle ride" which takes place in cities across the globe to protest car culture and oil wars and to celebrate bicycles.

27. The bicycle ride lasted about three hours and ended in several different locations around the City of New York because the original mass of approximately five thousand bicycles had been splintered and re-routed by police at different inter-sections and locations.

28. The Plaintiff ended her bicycle ride, along with other bicycle riders, in front of St. Mark's Church in the lower east side neighborhood of New York City.

29. The Plaintiff locked up her bicycle in the vicinity of 2nd Avenue and 8th Street and went inside a restaurant to use the bathroom and to fill up her water bottle.

30. The Plaintiff came out of the restaurant and bought cigarettes at a store next to the restaurant.

31. The Plaintiff was about two hundred feet from a group of bicyclists who were situated in the vicinity of the intersection of 2nd Avenue and 10th Street.

32. The Plaintiff was alone and had been alone for at least one hour after having been separated from her friend during the bicycle ride.

33. As the Plaintiff was standing in front of the store smoking a cigarette and observing what was generally taking place, the Plaintiff observed two individuals whom she knew as Indymedia reporters. The individuals informed her that they were going to move closer to the group of bicyclists who had congregated some distance from where the Plaintiff was standing [perhaps, as noted, two hundred feet].

34. The Plaintiff indicated that she was going back to the Indymedia Center rather than to continue to be present at that location. The Plaintiff indicated to them that she did not want to be in a situation where she might get arrested.

35. The Plaintiff then unlocked her bicycle and started walking south on the Second Avenue sidewalk.

36. The Plaintiff had walked abut twenty feet when she observed a line of police advancing toward her. Again, the Plaintiff was walking on the sidewalk.

37. The Plaintiff observed the police line picking individuals on the sidewalk, with bicycles, and forcing those individuals into the street.

38. The Plaintiff continued walking on the sidewalk and a police officer stopped her and told the Plaintiff that, if she wanted to leave, the Plaintiff would have to go into the street.

39. The Plaintiff indicated that she would rather continue to walk on the sidewalk.

40. The Plaintiff was, while walking on the sidewalk with her bicycle, not obstructing pedestrian traffic, was not parading, was not being disorderly, was not obstructing anything, and was not otherwise engaged in any wrongful conduct.  She was walking on the sidewalk attempting to go away from the area to the Indymedia Center; and she was doing so.

41. The Plaintiff indicated to the officer that, if she went into the street, she would be arrested.

42. The officer indicated to the Plaintiff "that you can leave; that you just have to go into the street".

43. The Plaintiff indicated to the officer that she was leaving and that she did not want to go into the street because she would, then, be arrested.

44. The Plaintiff was then forced into the street by the officer who pulled the Plaintiff by her arm over and toward a group of police officers stating to the Plaintiff: "you're under arrest."

45. The Plaintiff was handcuffed and her bicycle was thrown into a pile with other bicycles.

46. The Plaintiff was directed to sit down with approximately twenty other individuals who also had been walking away with their bicycles when they were then arrested as had been the Plaintiff. Among those with whom the Plaintiff was arrested were German tourists who had been eating dinner and a middle aged Black man who had been on his way home from work.

47. The Plaintiff and others were sitting in the vicinity of the intersection of Second Avenue and 8th Street.  The time was approximately 9:30 P.M.

48. The police informed the Plaintiff and others, repeatedly, that "this is like a parking ticket, a summons, you'll be released in a couple of hours."

49. The Plaintiff was assigned to a female police officer [Sanasie].  Officer Sanasie was not the Officer who forced the Plaintiff into the street and who took the Plaintiff into custody. It is believed that Defendant Johnson and/or other of the command officers present in the vicinity of the Plaintiff's arrest and/or other police officials present in the vicinity of the Plaintiff arrest directed that the Plaintiff be arrested and charged and that he/they did so without probable cause or a basis for doing such and as part of a "mass arrest" mentality which is described as a "round 'em up sort it all out later" philosophy which is abhorrent to the Fourth Amendment.

50. A photograph was taken of the Plaintiff, Officer Sanasie, and of the Plaintiff's bicycle.

51. The Plaintiff and others, then under custodial arrest, were taken to "Pier 57" in Manhattan and processed therein at or about 11:00 P.M.

52. The Plaintiff was imprisoned and detained at Pier 57 for approximately twelve hours.

53. While at the "Pier", the Plaintiff and others asked the police custodians why they were not being released. The Plaintiff and others were told that they were not going to be released because, if they were released, they would just come back and be on the street the next day demonstrating and protesting. Thus, the Plaintiff and others continued to be held, albeit for impermissible and unconstitutional reasons [to prevent the Plaintiff and others from engaging in legitimate, reasonable, protected speech activity during the course of the Republican National Convention].

54. The Plaintiff was in a location which was dirty, chemical laden and which appeared to have an oil-like coated concrete floor.

55. The Plaintiff was denied access to a telephone call and to an attorney.

56. Eventually, the Plaintiff was taken to Manhattan Central Booking where she was photographed and fingerprinted.

57. The Plaintiff was released approximately nine hours after arriving at Manhattan Central Booking at approximately 8:00 P.M.

58. The Plaintiff was charged with one count of disorderly conduct and, then, given a Desk Appearance Ticket.

59. After being released from detention at the Central Booking facility, the Plaintiff, eventually, went back to Michigan to commence the new school term at the University of Michigan.

60. The Plaintiff was compelled, by the Desk Appearance Ticket which she received, to appear in Court at an arraignment n September 15, 2004.

61. At her appearance, the Plaintiff was, once again, required to give fingerprints; she was not arraigned; and she was informed that she would, once again, have to return to New York City on October 5, 2004.

62. The Plaintiff was arraigned on October 5, 2004, through her attorney who appeared for her, on two counts of disorderly conduct, one count of parading without a permit, and one count of obstruction of government administration in the second degree.

63. Eventually, on March 14, 2005, the criminal charges against the Plaintiff were dismissed.

64. While at Pier 57, the floor of the holding cell was covered and caked with oil and chemicals. The conditions placed the Plaintiff at risk to her health, welfare, and well being and the City of New York knew or should have known that those conditions [as described] placed the Plaintiff at increased jeopardy to her health and well being.

65. The conditions of the Plaintiff's confinement, individually and collectively, were unreasonable, unnecessary, and excessive terms and conditions of her seizure which placed the Plaintiff at risk.

66. There was no probable cause for the Plaintiff's arrest, detention, and imprisonment. The Plaintiff was doing absolutely nothing unlawful or improper or criminal when she was forced off the sidewalk by a New York City Police Officer and placed under arrest.

67. The Plaintiff was arrested, detained, and imprisoned in retaliation for the legitimate exercise of her First Amendment protected speech activities.

68. The Plaintiff was arrested and imprisoned for the collateral objective of punishing and retaliating against her for the exercise of her First Amendment protected speech activity.

69. The Plaintiff was subjected, by the nature and extent of her handcuffing, to excessive, unreasonable, and unnecessary force.

70. The Plaintiff was otherwise subjected to unreasonable, unnecessary, and excessive detention when, having been arrested, she was released with a Desk Appearance Ticket or Summons but only after perhaps twenty four hours when it ordinarily takes perhaps only four or five hours, at the most, for the processing of an individual with a Desk Appearance Ticket [for which she was qualified and qualifiable].

71. The Plaintiff was otherwise subjected to unreasonable, unnecessary, excessive terms and conditions of detention and imprisonment and seizure by, among other things, failure to provide holding cells which were not over-crowded and otherwise not environmentally toxic [the holding cells being over-crowded

and defined by chemical and toxic conditions that were harmful to the Plaintiff's welfare, health, and well being].

72. The Plaintiff was wrongly and unlawfully fingerprinted and photographed, such being unnecessary, excessive and unreasonable terms and conditions of her seizure and, in addition, a violation of her right to privacy

73. The actions and conduct taken against the Plaintiff were the result of and were propelled by the policies, practices and customs of the City of New York.

74. In expectation of demonstrations to be conducted by individuals at the Republican National Convention, the Defendant City of New York adopted policies, practices and customs which propelled arrests where there was otherwise no basis for arrest and, then, to excessively and unnecessary and punitively detain the individuals, rather than to release individuals who were qualified and qualifiable for release, after arrest, with Desk Appearance Tickets or Summonses in a timely manner and fashion, if at all, and to subject them to excessive, unnecessary, and unreasonable handcuffing, and, then, to imprison them in hostile, unreasonable, and unnecessary and health detrimental conditions; and to otherwise subject them to unnecessary, excessive, and unreasonable fingerprinting and/or photographing.

75. The policies and practices and customs adopted by the City of New York and implemented by its agents and employees during the Republican National Convention, propelled officers to act outside of the bounds of constitutional prescribed conduct and to push the envelope thereby subjecting the Plaintiff, among others, to false arrest, excessive and unreasonable, and unnecessary force in the form of excessive handcuffing, excessive detention, and detention and imprisonment in hostile, health detrimental and welfare detrimental conditions; and unnecessary fingerprinting, photographing and otherwise unreasonable, unnecessary, and excessive terms and conditions of her seizure.

76. The Defendant City's policies, practices, actions, and conduct propelled thereby were predicated on the "ends justifies the means" philosophy propelling the goal of keeping "order" at all costs even the cost of the violation of protected individual constitutional rights.  The policies, practices, customs and the actions and conduct propelled thereby were deemed a "cost of doing business", that is: in order to maintain order, the cost of violation the constitutional rights of individuals was permitted and authorized and allowed to be incurred.

77. The Plaintiff was subjected to false arrest, assault and battery, excessive detention, excessive handcuffing, health risk conditions of detention, malicious prosecution, and malicious

abuse of criminal process, and retaliation for the exercise of her State and federal constitutionally protected speech activity.

78.  The actions and conduct taken against the Plaintiff were taken by agents and employees of the City of New York who were acting under color of law and who were otherwise "state actors". While their conduct and actions were wrongful, unconstitutional, and otherwise unlawful they were taken by the City's agents and employees in the course of their respective duties and functions and incidental to the otherwise lawful performance of the same.

79.  The actions, conduct, policies, practices, and customs described herein violated the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

80.  The actions, conduct, policies, practices, and customs violated the Plaintiff's rights under the laws and Constitution of the State of New York including false arrest, malicious prosecution, malicious abuse of criminal process, assault, battery, unlawful fingerprinting and photographing, excessive detention, excessive handcuffing, and retaliation for her exercise of her State constitutionally protected speech activity.

81.  The actions, conduct, policies, practices, and customs were negligent and were otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

82.  The Plaintiff suffered physical pain, anxiety, embarrassment, loss of liberty, emotional distress, psychological trauma, mental anguish.

83.  The Plaintiff continues to suffer residual injuries and damages as a consequence of the actions, conduct, policies, practices, and customs as described and the violation of her rights associated therewith.

84.  The Plaintiff has not yet placed a specific value of the injuries and damages which she suffered and which she continues to suffer as there is no precise formula by which t measure the value of the injuries and damages. However, the injuries and damages are substantial in nature as is their value; and the Plaintiff seeks both compensatory and punitive damages in a significant and substantial amount.

85.  The Plaintiff has no other adequate remedy at law other than for the institution of the within litigation.

V.   CAUSES OF ACTION

A.   FIRST CAUSE OF ACTION

86. The Plaintiff reiterates Paragraph #'s 1 through 85 and incorporates such by reference herein.

87. The Plaintiff was falsely arrested and falsely imprisoned in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

88. The Plaintiff suffered injuries and damages.

B.   SECOND CAUSE OF ACTION

89. The Plaintiff reiterates Paragraph #'s 1 through 88 and incorporates such by reference herein.

90. The Plaintiff was falsely arrested and falsely imprisoned in violation of the Plaintiff's rights under the laws and Constitution of the State of New York.

91. The Plaintiff suffered injuries and damages.

C.   THIRD CAUSE OF ACTION

92. The Plaintiff reiterates Paragraph #'s 1 through 91 and incorporates such by reference herein.

93. The Plaintiff was maliciously prosecuted in violation of her rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

94. The Plaintiff suffered injuries and damages.

D.   FOURTH CAUSE OF ACTION

95. The Plaintiff reiterates Paragraph #'s 1 through 94 and incorporates such by reference herein.

96. The Plaintiff was maliciously prosecuted in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

97. The Plaintiff suffered injuries and damages.

### E. FIFTH CAUSE OF ACTION

98. The Plaintiff reiterates Paragraph #'s 1 through 97 and incorporates such by reference herein.

99. The Plaintiff was subjected to unreasonable, unnecessary, and excessive force in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

100. The Plaintiff suffered injuries and damages.

### F. SIXTH CAUSE OF ACTION

101. The Plaintiff reiterates Paragraph #'s 1 through 100 and incorporates such by reference herein.

102. The Plaintiff was subjected to assault and battery and unreasonable and unnecessary and excessive force in violation of the Plaintiff's rights under the laws and Constitution of the State of New York.

103. The Plaintiff suffered injuries and damages.

### G. SEVENTH CAUSE OF ACTION

104. The Plaintiff reiterates Paragraph #'s 1 through 103 and incorporates such by reference herein.

105. The Plaintiff was subjected to excessive and unnecessary and unreasonable detention in violation of her rights under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

106. The Plaintiff suffered injuries and damages.

### H. EIGHTH CAUSE OF ACTION

107. The Plaintiff reiterates Paragraph #'s 1 through 106 and incorporates such by reference herein.

108. The Plaintiff was subjected to excessive and unnecessary and unreasonable detention in violation of the Plaintiff's rights under the laws and Constitution of the State of New York.

109. The Plaintiff suffered injuries and damages.

### I. NINTH CAUSE OF ACTION

110. The Plaintiff reiterates Paragraph #'s 1 through 109 and incorporates such by reference herein.

111.  The Plaintiff was subjected to unreasonable, excessive and unnecessary terms and conditions of her detention and imprisonment including health detrimental conditions and including fingerprinting and including photographing in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

112.  The Plaintiff suffered injuries and damages.

### J.   TENTH CAUSE OF ACTION

113.  The Plaintiff reiterates Paragraph #'s 1 through 112 and incorporates such by reference herein.

114.  The Plaintiff was subjected to unreasonable, excessive, and unnecessary terms and conditions of her detention and imprisonment including health detrimental conditions and including fingerprinting and photographing in violation of her rights under the laws and Constitution of the State of New York.

115.  The Plaintiff suffered injuries and damages.

### K.   ELEVENTH CAUSE OF ACTION

116.  The Plaintiff reiterates Paragraph #'s 1 through 115 and incorporates such by reference herein.

117.  The Plaintiff was subjected to malicious abuse of criminal process in violation of her rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

118.  The Plaintiff suffered injuries and damages.

### L.   TWELFTH CAUSE OF ACTION

119.  The Plaintiff reiterates Paragraph #'s 1 through 118 and incorporates such by reference herein.

120.  The Plaintiff was subjected to malicious abuse of criminal process in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

121.  The Plaintiff suffered injuries and damages.

### M.   THIRTEENTH CAUSE OF ACTION

122.  The Plaintiff reiterates Paragraph #'s 1 through 121 and incorporates such by reference herein.

123. The Plaintiff was subjected to retaliation because of her reasonable exercise of her First Amendment protected speech in violation of her rights as guaranteed under the First Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

124. The Plaintiff suffered injuries and damages.

### N. FOURTEENTH CAUSE OF ACTION

125. The Plaintiff reiterates Paragraph #'s 1 through 124 and incorporates such by reference herein.

126. The Plaintiff was subjected to retaliation because of her reasonable exercise of her right to petition government in violation of her rights under the laws and Constitution of the State of New York.

127. The Plaintiff suffered injuries and damages.

### O. FIFTEENTH CAUSE OF ACTION

128. The Plaintiff reiterates Paragraph #'s 1 through 127 and incorporates such by reference herein.

129. The policies and practices and customs and procedures herein challenged propelled the unconstitutional actions and conduct and violated the Plaintiff's rights as guaranteed under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

130. The Plaintiff suffered injuries and damages.

### P. SIXTEENTH CAUSE OF ACTION

131. The Plaintiff reiterates Paragraph #'s 1 through 130 and incorporates such by reference herein.

132. The actions, conduct, policies, practices, customs and procedures herein challenged were negligent and violative of the Plaintiff's rights as guaranteed under the laws and Constitution of the State of New York.

133. The Plaintiff suffered injuries and damages.

### Q. SEVENTEENTH CAUSE OF ACTION

134. The Plaintiff reiterates Paragraph #'s 1 through 133 and

incorporates such by reference herein.

   135.   Independent of the Monell claims against the City of New York pursuant to and under federal claim jurisdiction, the Defendant City is responsible, under State law law, for the violation of the Defendant Officers' actions and conduct pursuant to and under the doctrine of respondeat superior.

   136.   The Plaintiff suffered injuries and damages.

   WHEREFORE and in light of the foregoing, it is respectfully requested that the Court:

>    [a] Assume jurisdiction herein.
>
>    [b] Award compensatory and punitive damages.
>
>    [c] Aware declaratory and injunctive relief.
>
>    [d] Empanel a jury.
>
>    [e] Award such other and further relief as the Court deems is in the interest of justice and/or necessary to assure complete relief for the Plaintiff.
>
>    [f] Award attorney's fees and costs.

DATED: New York, New York
       June 6, 2007

>                                 Respectfully submitted,
>
>                                 /s/James I. Meyerson_____
>                                 JAMES I. MEYERSON [JM 4304]
>                                 396 Broadway-Suite # 601
>                                 New York, New York 10013
>                                 [212] 226-3310
>                                 ATTORNEY FOR PLAINTIFF
>                                 BY:_____

15

```
TO:
JAMES MIRRO, ESQ.
Assistant Corporation Counsel
City of New York
Department of Law
Special Federal Litigation Division
100 Church Street
New York, New York 10007
[212] 788-8026
[212] 788-9776/FAX
ATTORNEY FOR DEFENDANT PARTIES
BY:_____
```